# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | | |
|---|---|---|
| SHARON M. STEWART ALEXANDER, | ) | No. ED CV 18-711-PLA |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

## PROCEEDINGS

Plaintiff filed this action on April 6, 2018, and a First Amended Complaint on April 11, 2018 ("FAC"), seeking review of the Commissioner's[1] denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on April 24,

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

2018, and May 14, 2018.  Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on January 30, 2019, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Submission under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on March 7, 1960.  [Administrative Record ("AR") at 123, 129.]  She has past relevant work experience as a medical laboratory technician.  [AR at 24, 43.]

On May 15, 2014, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since September 2, 2013.  [AR at 17; see also AR at 123-28, 129-30.]  After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  [AR at 75-76.]  A hearing was held on October 13, 2016, at which time plaintiff appeared represented by an attorney, and testified on her own behalf.  [AR at 26-47.]  A vocational expert ("VE") also testified.  [AR at 43-46.]  On November 25, 2016, the ALJ issued a decision concluding that plaintiff was not under a disability from September 2, 2013, the alleged onset date, through March 31, 2016, the date last insured.  [AR at 14, 17-25.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [AR at 120.]  When the Appeals Council denied plaintiff's request for review on February 21, 2018 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry,

468 F.3d at 1114.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2.  Lounsburry, 468 F.3d at 1114.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from September 2, 2013, the alleged onset date, through March 31, 2016, her date last insured.  [AR at 19.]  At step two, the ALJ concluded that plaintiff has the severe impairments of left knee strain/medial meniscus tear.  [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing.  [AR at 20.]  The ALJ further found that plaintiff

retained the residual functional capacity ("RFC")[2] to perform a range of light work as defined in 20 C.F.R. § 404.1567(b),[3] as follows:

> [She] is restricted by the following limitations:  lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing, and/or walking for six hours out of an eight-hour workday, with normal breaks, for a total of eight hours in an eight-hour workday; and a change of position break every hour for a couple of minutes.

[Id.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as a medical laboratory technician.  [AR at 24, 43-45.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of September 2, 2013, through March 31, 2016, the date last insured.  [AR at 24.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he:  (1) considered plaintiff's subjective symptom testimony; and (2) failed to properly consider the opinion of her Workers' Compensation agreed medical examiner, Steven B. Silbart, M.D.  [JS at 4.]  As set forth below, the Court agrees with plaintiff and remands for further proceedings.

## A.    SUBJECTIVE SYMPTOM TESTIMONY

---

[2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 4-12.]

The ALJ summarized plaintiff's testimony as follows:

[Plaintiff] testified she last worked in September of 2013, after injuring her knee. [She] alleged symptoms of pain and testified she would be able to work but-for her knee pain. She stated treatment for her impairment included knee surgery in 2013, use of a knee brace, medications, and physical therapy. [Plaintiff] further claimed she was limited in her ability to lift more than 15 pounds, be on her feet for more [than] six hours, sit, stand, and/or walk for six hours out of an eight-hour workday, walk more than one hour at a time before needing to sit for a couple hours, stand more than 30 minutes at a time before needing to sit for one to two hours, and sitting for up to 30 minutes before needing to stand and move around or take a couple step [sic] for 10 to 15 minutes. However, she reported engaging in the following activities of daily living: watching television; preparing something [sic] meals; reading, talking on the phone; and moving around the house to relieve pain. She also stated she performed light grocery shopping and went to the movies at times. [Plaintiff] asserted she was unable to work as a result of her alleged impairments.

[AR at 21 (citing testimony).]

The ALJ discounted plaintiff's subjective symptom statements:

[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect [plaintiff's] ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

Allegations regarding the severity of [her] symptoms and limitations are disproportionate to the objective evidence. The relevant period in this case runs from the alleged onset date, September 2, 2013, through the date last insured, March 31, 2016. In summary, the record suggests no worsening and some improvement. Positive findings since the alleged onset date do not support more restrictive functional limitations than those assessed herein. There is also no reliable medical source statement from any physician endorsing the extent of [plaintiff's] alleged functional limitations.

. . . .

In sum, the residual functional capacity assessed by this decision for the period from the alleged onset date, September 2, 2013, through the date last insured, March 31, 2016, is supported by the evidence as a whole. The objective medical evidence does not support the alleged severity of symptoms.

[AR at 21, 24 (citation omitted).]

**1.    Legal Standard**

Prior to the ALJ's assessment in this case, Social Security Ruling ("SSR")[4] 16-3p went into effect. See SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).[5] SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *2. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo, 871 F.3d at 678 n.5. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2017 WL 5180304, at *11. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit also noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character

---

[4]     "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

[5]     SSR 16-3p, originally "effective" on March 28, 2016, was republished on October 25, 2017, with the revision indicating that SSR 16-3p was "applicable [rather than effective] on March 28, 2016." See 82 Fed. Reg. 49462, 49468 & n.27, 2017 WL 4790249, 4790249 (Oct. 25, 2017); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). Other than also updating "citations to reflect [other] revised regulations that became effective on March 27, 2017," the Administration stated that SSR 16-3p "is otherwise unchanged, and provides guidance about how we evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims . . . ." Id. The Ninth Circuit recently noted that SSR 16-3p is consistent with its prior precedent. Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (SSR 16-3p "makes clear what [Ninth Circuit] precedent already required"). Thus, while SSR 16-3p eliminated the use of the term "credibility," case law using that term is still instructive in the Court's analysis.

and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [her] . . . ability to perform work-related activities . . . ." SSR 16-3p, 2017 WL 5180304, at *4. In assessing the intensity and persistence of symptoms, the ALJ must consider a claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms; treatment, other than medication received for relief of pain or other symptoms; any other measures used to relieve pain or other symptoms; and other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929; see also Smolen v. Chater, 80 F.3d 1273, 1283-84 & n.8; SSR 16-3p, 2017 WL 5180304, at *4 ("[The Commissioner] examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.").

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering, the ALJ's reasons for rejecting a claimant's subjective symptom statements must be specific, clear and convincing. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Trevizo, 871 F.3d at 678 (citing Garrison, 759

F.3d at 1014-15); Treichler, 775 F.3d at 1102. "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, in discounting plaintiff's testimony, the ALJ found only that her subjective symptom statements were not supported by the medical evidence. [AR at 21.]

### 2.    Objective Evidence

Plaintiff contends that "after the boilerplate introduction," the ALJ offered "a single issue for finding [plaintiff's] testimony regarding her symptoms not consistent with the record," i.e., that her testimony was "'disproportionate' to the objective evidence." [JS at 7 (citing AR at 21).] She contends that the ALJ is required to consider "'excess pain' not simply the degree of pain limitation established by the objective medical evidence." [Id. (citing Bunnell, 947 F.2d at 345).] Plaintiff also submits that although the ALJ *mentioned* plaintiff's daily activities, he did not articulate this as a *rationale* to reject plaintiff's testimony. [JS at 8 (citations omitted).] She further submits that there is nothing in her descriptions of her limitations that shows she is capable of maintaining substantial gainful work activity for eight hours a day, five days a week. [JS at 9 (citations omitted).] She also notes that even if she does have some ability to perform those activities, that is not a reason to find a lack of credibility. [Id. (citing Lester, 81 F.3d at 833 (noting that symptom-free periods, and even the sporadic ability to work, are not inconsistent with disability because the ALJ must evaluate the claimant's ability to work on a sustained basis)).] Plaintiff states that the

1   ALJ's citing of plaintiff's activities without explaining how they are inconsistent with her complaints

2   is "legally insufficient." [JS at 10 (citations omitted).]

3       Defendant responds that the ALJ's "primary consideration was how consistent Plaintiff's

4   statements about symptoms were with the objective clinical findings." [JS at 13 (citing 20 C.F.R.

5   § 404.1529(c)(2)).] Defendant notes that the ALJ found plaintiff's subjective symptom statements

6   to be "disproportionate to the objective clinical findings," which showed "only mild degenerative

7   joint disease of the left knee and no fracture"; "reduced range of motion, joint effusion, and

8   tenderness but no instability of the medial or lateral collateral ligaments"; "findings consistent with

9   a medial meniscal tear but [intact] anterior, posterior, and lateral collateral ligaments"; and

10   degenerative changes of the left knee. [JS at 13-14 (citing AR at 21, 22, 313-14, 315-16, 317-18,

11   366, 967).] Defendant also notes that on August 29, 2016, the consultative examiner, Vicente R.

12   Bernabe, D.O., reported "normal gait; could walk on tiptoes and heels without difficulty"; well-

13   healed surgical scars on the left knee "with only mild tenderness and intact ligament stability"; and

14   grossly normal strength, normal sensation, largely normal reflexes, and no spasm. [JS at 14

15   (citing AR at 22, 773, 774, 775).] Defendant also suggests that the ALJ considered plaintiff's

16   treatment history, and found she "showed improvement in active range of motion despite ongoing

17   limited stability and difficulty in performing a one-leg stance," and that the physical therapy records

18   showed plaintiff "only did her exercises once a day rather than twice a day as directed or

19   sometimes did not do certain exercises at all." [JS at 15 (citations omitted).] Additionally,

20   defendant states that the "ALJ also noted improvement in 2016"; plaintiff takes only Tylenol and

21   ibuprofen for her knee pain; "Dr. Bernabe's opinion that Plaintiff was capable of medium exertion

22   work failed to support Plaintiff's allegations of disabling symptoms"; and plaintiff's "daily activities

23   were inconsistent with the extent of pain and limitation she alleged." [JS at 16-17 (citations

24   omitted).] Defendant concludes that the ALJ "clearly identified several valid reasons for not finding

25   Plaintiff's subjective symptom testimony fully supported, and his reasons were 'sufficiently specific

26   to permit the court to conclude that the ALJ did not arbitrarily discredit [plaintiff's] testimony.'" [JS

27   at 18 (citations omitted).]

28

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the <u>only</u> basis to reject a claimant's subjective symptom testimony (<u>Trevizo</u>, 871 F.3d at 679 (quoting <u>Robbins</u>, 466 F.3d at 883)), it is one factor that an ALJ can consider in evaluating symptom testimony.  <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ must consider in his credibility analysis."); SSR 16-3p, 2017 WL 5180304, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities for an adult").  "The intensity, persistence, and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence. . . . These findings may be consistent with an individual's statements about symptoms and their functional effects.  However, when the results of tests are not consistent with other evidence in the record, they may be less supportive of an individual's statements about pain or other symptoms than test results and statements that are consistent with other evidence in the record." SSR 16-3p, 2017 WL 5180304, at *5.  Nevertheless, as the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." <u>Treichler</u>, 775 F.3d at 1103 (citation omitted); <u>see</u> <u>Laborin v. Berryhill</u>, 867 F.3d 1151, 1153 (9th Cir. 2017) (ALJ's statement that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible to the extent his testimony is "inconsistent with the above residual functional capacity assessment" is an insufficient basis for discrediting testimony).

Here, the ALJ stated his conclusion that plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms was "disproportionate to the objective evidence," and "not entirely consistent with the medical evidence and other evidence in the record" [AR at 21], and then summarized the medical evidence, without once mentioning plaintiff's testimony. However, as previously noted, the "ALJ must identify the testimony that [is being discounted], and *specify* 'what evidence undermines the claimant's complaints.'"  <u>Treichler</u>, 775 F.3d at 1103 (citation omitted) (emphasis added); <u>Brown-Hunter</u>, 806 F.3d at 493.  Here, the ALJ did not

identify the testimony he was discounting and "link that testimony to the particular parts of the record" supporting his determination.  Brown-Hunter, 806 F.3d at 494.  Indeed, the ALJ's running narrative regarding plaintiff's medical records, with no mention of plaintiff's purported daily activities, while summarizing a number of the medical records, did not provide "the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless.  Id. at 493 (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony []he found not credible, and never explained *which* evidence contradicted that testimony") (citing Treichler, 775 F.3d at 1103, Burrell, 775 F.3d at 1138).

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.  Even assuming this was a specific, clear and convincing reason for discounting plaintiff's testimony, it cannot be the only reason.  Additionally, even if it was not the only reason, the ALJ's determination to discount plaintiff's subjective symptom testimony for this reason rises or falls with the ALJ's other grounds for discrediting plaintiff.  As seen below, those other possible grounds are insufficient as well.

### 3.    Daily Activities

Inconsistency between symptom allegations and daily activities may act as a clear and convincing reason to discount subjective symptom testimony.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Bunnell, 947 F.2d at 346.  But the mere fact that "a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).  "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to

periodically rest or take medication." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (internal citations omitted); see also Molina, 674 F.3d at 1112-13 ("While a claimant need not vegetate in a dark room . . . to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.") (internal citations and quotations omitted). "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as []he would be by an employer." Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in Garrison, 759 F.3d at 1016).

Additionally, an ALJ may discredit testimony when a claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113. However, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)). "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Trevizo, 871 F.3d at 682 (citing Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014)).

The ALJ's summary of plaintiff's subjective symptom testimony was followed by his statement that "[h]owever, she reported engaging in . . . activities of daily living [such as] watching television; preparing something [sic] meals; reading, talking on the phone; and moving around the house to relieve pain. She also stated she performed light grocery shopping and went to the movies at times." [AR at 21.] Merely introducing plaintiff's daily activities into the discussion of plaintiff's subjective symptom testimony by using the qualifying term "however," does not provide the Court with any rationale for the ALJ's implied determination that plaintiff's activities are somehow inconsistent with her subjective symptom testimony. This is especially true where -- as here -- the amount of involvement plaintiff described in these activities was minimal. For instance, she testified that she watches TV or reads magazines most of the day, and tries "to move around

a little bit," by walking around the coffee table, so that her knee does not stiffen up; she goes to the grocery store "for light items," but her husband "mainly does the shopping"; and "[e]very once in a while" she goes to the movies.  [AR at 35-36.]  The ALJ neither made specific findings nor pointed to any record evidence to support his implied conclusion that plaintiff's daily activities as plaintiff described them were somehow incompatible with the severity of the symptoms alleged by plaintiff.[6]  See id.  Indeed, nothing in plaintiff's descriptions of her activities would permit an inference that plaintiff could lift more than 15 pounds, be on her feet for more [than] six hours, sit, stand, and/or walk for six hours out of an eight-hour workday, walk more than one hour at a time before needing to sit for a couple hours, stand more than 30 minutes at a time before needing to sit for one to two hours, and sit for up to 30 minutes before needing to stand and move around or take a couple steps for 10 to 15 minutes, as plaintiff testified to at the hearing.  Plaintiff's reported level of activity clearly *does* reflect that she has difficulties in performing her daily activities.

As in Brown-Hunter, the ALJ here "simply stated [his] [subjective symptom testimony] conclusion and then summarized the medical evidence supporting [his] RFC determination." Brown-Hunter, 806 F.3d at 494.  Although the ALJ also summarized plaintiff's daily activities, he did not identify the testimony he found not credible, and "link that testimony to the particular parts of the record" supporting his determination to discount plaintiff's subjective symptom testimony. Id.  In short, "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless.  Id. (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony [he] found not credible, and never explained *which* evidence contradicted that

---

[6]    As the Bjornson court noted, a person has more flexibility in scheduling daily activities than in scheduling job activities, and is not held to a minimum standard of performance in daily activities. Bjornson, 671 F.3d at 647.  The court went on to observe that "[t]he failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."  Id.

testimony") (citing <u>Treichler</u>, 775 F.3d at 1103; <u>Burrell</u> 775 F.3d at 1138).

Accordingly, even assuming the ALJ impliedly determined that plaintiff's reported daily activities were somehow incompatible with her subjective symptom allegations, this was not a specific, clear and convincing reason supported by substantial evidence for discounting plaintiff's subjective symptom testimony.

### 4.    Other Evidence

Defendant's suggestions that plaintiff's subjective statements were discounted based on evidence showing that plaintiff showed improvement with physical therapy, did not comply with her exercise regimen, and that she takes only mild medication for her knee pain were not reasons articulated by the ALJ for discounting plaintiff's testimony.    "Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."  <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (emphasis added, citation omitted); <u>Pinto v. Massanari</u>, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.").  The Court will not consider reasons for discounting plaintiff's subjective symptom testimony that were not given by the ALJ in the Decision.  <u>See Trevizo</u>, 871 F.3d at 677 & nn.2, 4 (citation omitted).

Additionally, after summarizing the 2013 medical testimony, the ALJ noted that the record "suggests no worsening and some improvement."  [AR at 21.]  In support, he noted that objective findings "from 2014 through 2015 showed findings similar to those in 2013," and summarized the 2014-2015 findings as including decreased range of motion in the left knee; positive McMurray's test results; left knee tenderness; positive chondromalzia patellar test results; decreased motor testing and tenderness in the left knee; and "atrophy and weakness in the healed arthroscopic portals medial and lateral joint line tenderness."  [AR at 22.]  Then, after summarizing these 2013-2015 generally symptomatic and "no[t] worsening" findings, the ALJ (and defendant) implied that plaintiff's testimony should be discounted because the record shows improvement in her condition

in 2016. [See id. (stating that "[t]hen, in 2016, [plaintiff's] left knee impairment appears to have improved.").] The evidence cited by the ALJ as demonstrating the alleged improvement consists of (1) a February 2016 treatment note that according to the ALJ still showed "slight swelling and slight tenderness around the patella of the left knee, degenerative changes of the medial compartment of the left knee, and osteophyte formation [but also that] [plaintiff] had full range of motion, negative Lachman's, no joint line tenderness, no pain with valgus/varus stress, and normal sensation and motor function)] [AR at 965, 967]; (2) the August 29, 2016, opinion of the consultative orthopedic examiner, who determined that plaintiff was capable of medium level work [AR at 771-86]; and (3) a September 6, 2016, treatment note showing normal range of motion, no swelling, no effusion, and no tenderness in the left knee area [AR at 1434]. [AR at 22.] These records, however, with the the exception of the February 2016 note, which still showed left knee symptoms, were generated *after* plaintiff's date last insured of March 31, 2016. Moreover, the February 2016 treatment note reflected "**progressive** degenerative change [of the] medial compartment left knee"; and the September 6, 2016, note also reflects that on that date the physician administered a steroidal injection in plaintiff's left knee. [See AR at 1435-36.] Thus, to the extent, if any, that the ALJ found these 2016 records to (1) show improvement, and (2) to be a reason to discount plaintiff's subjective symptom testimony, this was not a clear and convincing reason supported by substantial evidence.

### 5. Conclusion

The Court finds the ALJ's subjective symptom testimony determination to be virtually indistinguishable from the subjective symptom testimony determination rejected by the Ninth Circuit in Brown-Hunter. As in Brown-Hunter, the ALJ here "simply stated [his] non-credibility conclusion and then summarized the medical evidence supporting [his] RFC determination." Brown-Hunter, 806 F.3d at 494. Additionally, although the ALJ also summarized plaintiff's the medical evidence as well as plaintiff's daily activities, he did not identify the testimony he found not credible, and "link that testimony to the particular parts of the record" supporting his non-credibility determination. Id. In short, "[t]his is not the sort of explanation or the kind of 'specific

reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Id.

Remand is warranted on this issue.

**B.    MEDICAL OPINIONS**

**1.    Legal Standard**

"There are three types of medical opinions in social security cases:  those from treating physicians, examining physicians, and non-examining physicians." Valentine, 574 F.3d at 692; see also 20 C.F.R. §§ 404.1502, 404.1527.[7]  The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo, 871 F.3d at 675 (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original).  Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Bray, 554 F.3d at 1221, 1227); Turner, 613 F.3d at 1222.  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d

---

[7]    The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply.  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c.  Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).  However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

at 1198). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198). When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray, 554 F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 2.    Dr. Silbart

On November 21, 2014, Dr. Silbart evaluated plaintiff for an Agreed Medical Evaluation in connection with plaintiff's California Workers' Compensation claim. [AR at 319-40, 746-48.] Plaintiff notes that Dr. Silbart "took a medical history, reviewed records, and conducted a physical examination." [JS at 21 (citing AR at 319-40, 746-48).] In his report, Dr. Silbart noted plaintiff had 3+/5 muscle strength in her left quadriceps and hamstrings; was unable to toe or heel walk; and

had an antalgic gait. [AR at 328.] He opined that plaintiff "remains validly temporarily totally disabled." [AR at 330.] Also on November 21, 2014, Dr. Silbart issued a "permanent and stationary report for [plaintiff's] left knee industrial injury." [JS at 21 (citing AR at 746-48).] In that report, he noted that plaintiff's future medical care should include a provision for further left knee surgery, and also stated that she was unable to return to her usual and customary work. [AR at 747.]

In his decision, the ALJ generally stated the following regarding plaintiff's workers' compensation records:

Medical source statements utilizing terms specific to workers' compensation law are given little weight. Those terms are not used to determine disability under the Social Security Act. Therefore, medical source statements utilizing worker's compensation specific terms in the context of a workers' compensation case are not relevant with regard to an application under the Social Security Act. The issue of whether or not a claimant is disabled is one reserved to the Commissioner. Such statements are not entitled to controlling weight and are not given special significance. Statement [sic] declaring disability are also not consistent with the above-discussed evidence, which does not support a finding of disability. For these reason [sic], statements or restrictions involving terms such as or similar to the following, made within the context of the [plaintiff's] workers' compensation case, . . . are given little weight: "incapable of performing her past customary work;" "whole person impairment" ratings or percentages; "permanent and stationary;" "maximum medical improvement"; or "permanent partial disability" are given little weight.

Little weight is given to statements indicating [plaintiff] was "temporarily totally disabled" and/or temporary restrictions. As those opinions do not reflect [plaintiff's] long-term capabilities and/or limitations during the relevant period, they provide little probative value to this analysis. Additionally, the issue of whether or not a claimant is disabled is one reserved to the Commissioner. Such statements are not entitled to controlling weight and are not given special significance. Moreover, those opinions are not consistent with the above-discussed evidence. Thus, those statements are given little weight.

General statements, such as those indicating that [plaintiff's] decreased range of motion and pain "impair[ed] [plaintiff's] ability to walk and move around" are also give [sic] little weight. Such statements are not sufficiently descriptive and do not provide a function-by-function analysis of [plaintiff's] upper most [sic] capabilities. Thus, little weight is given to such statements.

[AR at 23 (citations omitted).]

Plaintiff argues that the ALJ failed to "even discuss let alone articulate rationale for rejecting Dr. Silbart's opinion regarding [plaintiff's] inability to perform her past work." [JS at 22.] She states that it was legal error for the ALJ to ignore this significant and probative medical evidence. [Id.]

19

Defendant responds that the ALJ is not required to discuss every piece of evidence in the record and, although the ALJ is required to explain "why 'significant probative evidence has been rejected,'" plaintiff failed to point to any specific functional limitations pertaining to plaintiff's ability to perform work activities that Dr. Silbart assessed, or to "show any inconsistency between Dr. Silbart's evaluation and the ALJ's . . . [RFC] finding." [JS at 23 (citation omitted).] Defendant also submits that the ALJ's discussion of the weight he gave to the workers' compensation records provided a valid reason for giving little weight to that evidence. [JS at 25.] Defendant notes that Dr. Silbart's "primary recommendations for Plaintiff's future treatment included 'oral anti-inflammatory and non-narcotic analgesic medication, as well as orthopedic follow-up on an intermittent and as needed basis for flares of symptomatology," and that although Dr. Silbart noted that provision for future arthroscopy of the left knee needed to be made, "Plaintiff admitted at the hearing that she had not undergone additional surgery based on guidance from her primary care physician." [JS at 25 (citing AR at 42, 747).]

An ALJ "may not disregard a . . . medical opinion simply because it was initially elicited in a state workers' compensation proceeding . . . ." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). Instead, an ALJ must evaluate the medical records prepared in the context of workers' compensation in the same way she would evaluate records obtained otherwise. Id. (citing Coria v. Heckler, 750 F.2d 245, 248 (3d Cir. 1984)) ("[T]he ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the workers' compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim"). Further, an ALJ is not entitled to reject a medical opinion based "on the purpose for which medical reports are obtained." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1200 n.5 (9th Cir. 2004) (citing Lester, 81 F.3d at 830).

Here, the ALJ seems to have arbitrarily discounted all of plaintiff's workers' compensation records simply by virtue of the fact that they were "elicited in a state workers' compensation proceeding." [See AR at 23.] By failing to address Dr. Silbart's findings, including his opinion that future surgery might be necessary, the ALJ also necessarily failed to translate his opinion into the

Social Security context.  See Desrosiers v. Sec'y Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (decision was not supported by substantial evidence because the ALJ had not adequately considered definitional differences between the California workers' compensation system and the Social Security Act).  "While the ALJ's decision need not contain an explicit 'translation,' it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, *and took those differences into account in evaluating the medical evidence.*"  Booth, 181 F. Supp. 2d at 1106 (emphasis added).  Here, notwithstanding defendant's suggestion and implication that Dr. Silbart's opinion about future surgery was somehow invalid because plaintiff "admitted" that "she had not undergone additional surgery based on guidance from her primary care physician" [JS at 25 (citing AR at 42)], what plaintiff actually stated at the hearing did not undermine Dr. Silbart's opinion that plaintiff needed additional surgery:  she testified that after the initial surgery she had been told that her meniscus was torn again and that she did not go for the additional surgery because "when [she] talked to [her] primary about the meniscus being torn again, he said that if I were to probably have surgery again, it probably would tear again because I have so much arthritis in my knee.  And so I didn't want to go through the procedure again only for it to come out with the same result."  [AR at 42.] Thus, this is not an issue of plaintiff "creating" a nonexistent condition -- test results revealed that plaintiff's meniscus had torn again after the surgery.  [See, e.g., AR at 746-48, 756.]

Based on the foregoing, the ALJ's "reasons" for discounting all of the workers' compensation records and opinions, including Dr. Silbart's, were not specific, clear and convincing.  Remand is warranted on this issue.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits.  Trevizo, 871 F.3d at 682 (citation omitted).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an

immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Second, because the ALJ failed to provide specific and legitimate reasons for discounting the opinions of Dr. Silbart, the ALJ on remand shall reassess the medical opinions of record, including the opinions of Dr. Silbart. The ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects. Based on his reevaluation of the medical evidence and plaintiff's subjective symptom testimony, the ALJ shall reassess plaintiff's RFC and proceed through step four and, if warranted, step five to determine, with the assistance of a VE if necessary, whether plaintiff can perform her past relevant work or any other work existing in significant numbers in the regional and national economies. See Shaibi v. Berryhill, 883 F.3d 1102, 1110 (9th Cir. 2017).


**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

Judgment herein on all parties or their counsel.

   **This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  February 19, 2019

                   _____
                       PAUL L. ABRAMS
            UNITED STATES MAGISTRATE JUDGE